In re Chapter 13 Trustee Fees in Unconfirmed Chapter 13 Cases. Mahesha Subbaraman appearing for Appellant. Louisa A. Szilard appearing for Appellee. Good morning. Would you like to reserve some time for rebuttal? Yes, I would, Your Honor. I'd like to reserve five minutes. Very good. Go ahead. May it please the panel, my name is Mahesha Subbaraman. It is my privilege to represent Chapter 13 Standing Trustee Diane C. Kearns. As the panel is aware, this appeal concerns the trustee's due process challenge to the Bankruptcy Code's imposition of a planned confirmation condition on the user fees that fund the trustee's office. The Bankruptcy Court erroneously determined that Ninth Circuit precedent foreclosed the trustee's due process challenge as a matter of stare decisis. We ask that the panel reverse the Bankruptcy Court's decision, reach the trustee's due process challenge, and provide that challenge in the trustee's favor. I welcome the panel's questions. You know, you cite the case involving the mayor who got paid for a conviction. One of my questions about that is, isn't your client the mayor? And if so, how is the mayor's due process rights violated by that arrangement? I can see how the defendant's rights are violated, but how are the mayor's rights violated? Well, Your Honor, I think that it's important to recognize that if you're kind of looking at this from a kind of what you might call an injury perspective, the question is, do we have an injury? Is that injury being caused by the law or the issue that is at stake here, and can it be remedied? And I think we have all of that here. We have an injury, and we have two forms of injury, essentially. One, we have the monetary injury that the trustee is suffering through the lost fees that she should otherwise be able to collect. But we also have in place a statutory requirement that the trustee is the representative of the estate and has to be disinterested, and that her fidelity or her ability to be faithful to that condition is impaired, as is true for all Chapter 13 trustees, so long as the condition remains in place. And so I think we can say at a minimum that the trustee has an interest, as funny as this might sound, in her disinterestedness, in ensuring that her office is able to perform the functions that the Bankruptcy Code requires it to perform, and that requires her by bond to faithfully perform. But I still don't see, the injury has to be tied to the violation, I think, right? So how is her injury tied to a violation of her due process rights? Well, her due process interest is in being able to faithfully perform the functions of trustee. As we understand it, due process requires the trustee to be financially disinterested. That's what the BAP cases say, that's what the Ninth Circuit cases say, and that's what the Supreme Court says. So if you think about a case, for example, like Mosser v. Darrow, which is the Supreme Court's seminal case on bankruptcy trustee, what that case says very clearly is that trustees have to forego any form of financial arrangement that biases them. Even if Congress imposes that relationship? Even if Congress imposes it, if what we're in the end talking about here is a constitutional due process restriction. So Chapter 7 trustees should be in trouble then, huh? Your Honor, I'm not going to speak to anyone beyond Chapter 13 trustees. You're taking a pretty big ax to a pretty big tree here. So if that's the case, then Chapter 7 trustees inherently are statutorily financially interested. Well, no, Your Honor, I don't think so. Because I think in the end the question is, at least for the trust, just generally speaking for trustees, whether or not it is appropriate to condition the fees that they are being paid on plan confirmation. Now, there is no plan in a Chapter 7 case. There is in Chapter 13. There's objections to exemptions, there's sales of property, there's all kinds of ways in which the trustees' decisions put more money in the trustees' pocket and less in the debtor or creditor's pocket. That may well be the case, Your Honor, and I fully appreciate that. And maybe that's a challenge or an issue for another day. But the question is when you look... Or maybe their fiduciary obligation is paramount and there are means by which courts can regulate that exercise of fiduciary decisions akin to the recommendations that are brought in most jurisdictions on the Chapter 13 plan. So courts can absolutely regulate the fiduciary responsibilities that are borne by trustees. But it's important to recognize that due process protects not just kind of against actual bias, but the appearance of bias. And here the government doesn't really dispute that the plan confirmation condition biases the trustee in favor of plan confirmation. And when you look at... I guess Judge Ferris' point of, I see how that affects the debtor and the creditor. How does it affect the trustee? Well, Your Honor, we're not arguing that the creditor or a debtor could not come to this court and argue, I think my trustee is biased because they have an interest in plan confirmation. That shouldn't exist. But the mere fact that a debtor or a creditor could raise that argument doesn't mean that the trustees themselves can't. And part of the reason why is, as this court has pointed out, the trustee acts as a representative of the estate and acts in a representative role for the interests of many individuals or entities that aren't likely to appear in front of the court. If you look at the Escarcega case, I think that that case really crystallizes the neutrality and impartiality that is required of trustees because it says, for example, unsecured creditors aren't likely to be represented, aren't likely... The problem with that is the trustee owes duties to everybody, and they all have conflicting interests. That's... Judge London's treatise says the trustee's expected to work with everybody and for nobody. I think that's... That's the only way it can work, right? That is absolutely correct, Your Honor. We couldn't agree with Judge London more. But then I think the question becomes, does the plan confirmation condition assure the due process principles that surround that responsibility that attends to every party in the bankruptcy process or every stakeholder in the bankruptcy process or not? I'll take you to the next step. Even if we were to go along with you, wouldn't the trustee still have a financial interest in plan confirmation because if the plan's not confirmed, the case is going to get dismissed and the fees are going to stop flowing? I'm... I don't think... I think that's the source of the bias. I don't think I'm... Let's suppose you're right, and the trustee should get fees from day one. The trustee's going to get more fees if more plans get confirmed, right? Right, and that's the... So is that the same bias? No, I don't think so, Your Honor. And that's the argument that the government makes. The government says, well, there's already an inherent bias in the system because the more plans that get confirmed, the more the trustee gets paid and so forth. But I think the problem with that argument is... Well, there are two problems. One problem is that let's assume for the moment that that's a bias. It doesn't make sense to then say, well, let's pour gasoline on that bias by making the trustee's fees contingent on plan confirmation. Let's make this problem even worse. We would, I think, all recognize there are biases throughout the judicial system, but we wouldn't say that then Congress can add to those biases because those pre-existing biases exist. So that's, I think, one way of looking at it. But plans are supposed to be confirmed in about 60 days if you follow the statute. Well, Your Honor, I can tell you that in the District of Arizona, it's between 12 to 18 months before a plan gets confirmed. And I think that also kind of speaks... That blows me away. It may well. And I think that that then speaks to the reason why the U.S. Supreme Court has been so protective of the neutrality standard. What do we do with a situation where the trustee is indifferent? I mean, you're a millimeter over the requirements here, but somebody comes in and objects who's not the trustee plan doesn't get confirmed. What about that? So I think that that type of situation underscores the reason why, for the appearance of justice's purposes, that there should not be a plan confirmation condition. Because the trustee's judgment in those circumstances, the razor thin call, do I object, do I not object? There shouldn't be any question as to whether that decision might have been influenced by... But there's something, but there's an outside factor here that has nothing to do with the trustee. And frankly, no offense to the quasi judicial argument. I know what judges do because I am one. Okay. So let's not give that more credit than it should. If we have a situation where a secure creditor, somebody else makes an argument that, look, the trustee may think the statute's been satisfied here. By the way, we don't agree. Or there's this other issue. Or there's something else that the trustee isn't looking at. And the plan isn't confirmed for that reason. Do we pay the trustee then? I think in the end, Your Honor, and I hate to kind of push back a little bit on this, but I want to say... I wish you would, because I need an answer to that. Because I think this is a really kind of simple question. And really, the two questions that the Supreme Court's due process analysis here asks us is, one, is the trustee performing a quasi judicial function when it comes to plan confirmation and the decisions that they make before plan confirmation? For example, enforcement related decisions as to whether to move to dismiss a case. When you read S. Carsega, this court says very clearly that the bankruptcy court could not do its job unless it had the assistance of the Chapter 13 trustee. So I think when you have a statement that clear and that strong, it's really hard to say this is not a quasi judicial function. You know, we couldn't do our job without the clerk sitting in front of the bench. Absolutely. And that's not a quasi judicial officer, right? Actually, it is, Your Honor. And they're quasi judicial, and they're entitled to quasi judicial immunity. That's something different. Well, Your Honor, I don't think it is... The other three words are the same, but that's about it. Well, the reason the words are the same, and I encourage the court to look at footnote 20 of Imbler v. Pactman. That's a case we cite in our reply brief. In that case, the court explains where does the term quasi judicial immunity comes from. And it says, well, we look at the function that's being performed. If the function is quasi judicial, then we call it a quasi judicial function, and then the immunity comes afterwards and is called quasi judicial as well. So I think part of... If you look at the logic of quasi judicial immunity, which is what the Ninth Circuit talks about in the Castillo case, what the Ninth Circuit and what the Supreme Court has said about quasi judicial immunity is, it's there to protect the independence and the courageousness of the officers to whom it attaches. It's there to ensure that they don't shade their decisions in the face of financial pressure. Well, that's the same thing that the Toomey due process standard is trying to do. It's trying to ensure that financial considerations don't influence the exercise of a quasi judicial function. And I agree with you, Your Honor, a law clerk is not a judge. A juror is not a judge. A witness is not a judge. There are a lot of entities involved in the judicial process that are not judges. But the reason why the Toomey standard is so important is if Congress tomorrow were to say, well, you know, we're not happy with the way magistrate judges are doing their jobs with respect to their disposition of summary judgment motions. Now, they don't decide those motions. They just write reports and recommendations. So we'll offer them $1,000 incentives. You don't get $1,000 unless you recommend that the summary judgment motion gets granted. Well, if Congress were to pass that kind of law, I think that the defendants in those cases would say, that's a problem. And I think the same would be true if we were talking about a law that compensated a juror in a partisan way or compensated a clerk in a partisan way. We've talked you down to three minutes. Sure. I appreciate that, Your Honor, and thank you for your patience. Thank you. Go ahead, please. Good morning, Your Honor. May it please the Court. Louisa Soulard on behalf of the United States. We ask the Court to deny the constitutional challenge because Evans does not change the due process protections afforded parties whose interests are affected by confirmation. The Supreme Court in Toomey v. Ohio tells us that parties who may be deprived of life, liberty, or property are entitled to the due process protections of an impartial adjudicator. And that's exactly what they get in confirmation when an independent bankruptcy court decides whether to confirm a case and set the rights of the parties. Beyond a neutral decision maker, the Supreme Court in United Student Aid v. Espinoza tells us that parties who may be deprived of protected interests are also entitled to the due process protections of notice and an opportunity to be heard, which, again, is what they get here, notice of confirmation and an opportunity to object. With these three things, parties with protected interests receive the process they are due. The standing trustee asked this panel to supplement these due process protections by requiring that her recommendation also comport with due process. This argument fails for two reasons. First, because regardless of the amount of weight that her recommendation is given, it's the bankruptcy court who decides whether to confirm a plan. And a standing trustee should not be treated as a decision maker. And we know that the bankruptcy court is independent because bankruptcy courts do overrule standing trustee objections and even deny confirmation when a standing trustee hasn't objected. And just touching on a couple of the arguments that were made by Mr. Subbaraman, this is an unusual case. Typically, in a due process case, what you have is a party who has been deprived of life, liberty, or property coming to the court and saying that they did not receive due process. That's what happened in Toomey when Ed Toomey, who was convicted by the mayor of violating the liquor laws, came to the court and said, no, this is not right. Same thing with United Student Aid where the creditor came to the court and said, you can't discharge my interest. There's been a foul. We don't have that here and it's unclear who exactly has been deprived of their life, liberty, or property. Perhaps it's the creditor and if that's the case, then we still maintain that creditors receive all the due process to which they're entitled. It seems to me it's not the debtor because the debtor wants the plan confirmed. So a bias in favor of confirmation is not going to hurt the debtor. I'm sorry. If they get a 12 to 18 month delay in confirmation, I'd be outraged if I were a debtor. Excuse me, Your Honor. I meant the creditor. You said creditor. I'm just trying to narrow it down. In the rare case like Harmon where the debtor just decided after X months, you know what, I don't need this anymore. That's a pretty rare case. The incentive is almost always get that plan confirmed. Another of the arguments that was raised this morning, Mr. Subbaraman says that the United States does not dispute that the standing trustee is biased. That's not true. We first argue that due process is not implicated regardless of whether or not a standing trustee is biased. And I think there's an argument here that there is no bias. What the standing trustee has alleged in this case is that she's been denied $3,550. But in fiscal year 2023, she took in $1.5 million. That's 1.2 to cover her operating expenses, plus the maximum standing trustee compensation, plus about $50,000 in extra amounts that went into her operating reserve, which serves as a cushion. And this is not to say there's anything improper in this. This is part of one of the safeguards. So we're getting into a sort of an as-applied standard now, as opposed to just generally as on this? Well, I think this applies across the board, because the funding mechanism applies. It might be different in Idaho, for example. Or Alaska. Yeah, it might. So I don't know if that matters. Well, the funding mechanism is universal to all standing trustees. And it serves to spread the expenses across the year. As long as there's enough there to spread. Yeah. Right. Which is the Alaska situation.  Exactly, Your Honor. And based on the statistics from this last year, every standing trustee received compensation. So that tells us that all operating fees were paid. So to that extent, we don't think there is a bias. But if you were to assume for the sake of argument that there is a bias, that's where the safeguards come in. And these safeguards included the bonding requirement, which is a monetary incentive for the standing trustee to act properly. We also have the U.S. trustee supervision, which is another monetary incentive for the standing trustee to fulfill her duty. Because the U.S. trustee, without qualification, is required to supervise the administration of both Chapter 13 cases and Chapter 13 standing trustees. So to the extent a standing trustee is not fulfilling her statutory duties, the U.S. trustee can initiate termination of the standing trustee from future assignments and can petition the court for the removal of the standing trustee from existing cases. It seems to me that if we were to accept the argument that there is this bias, the only way to make that bias really go away is to make standing Chapter 13 trustees salaried government employees. Well, this case isn't about whether the standing trustee program could be improved. Perhaps it could be. What this case is about is due process. And the standing trustee's funding mechanism and the program itself does not change that parties with protected interests receive the due process to which they're entitled to in connection with confirmation. And the last point, again, just to touch on an argument that was made earlier, in Ray Castillo, as we said in our brief, we don't think that applies. It's an immunity case. And it doesn't have any applicability in our due process analysis. And one point that we found instructive was from the BAP decision in Ray Castillo. And it's footnote 4. And it says that the question of quasi-judicial immunity arises with two different types of defendants. One is those who resolve disputes between parties, like judges. And then the other is those who perform functions that are related to the judicial process, like clerk and standing trustees in that case. And I think that just shows that what is being discussed in the due process cases, like to me versus Ohio, is only the first category of people subject to quasi-judicial immunity. So unless this panel has any additional questions, I'll conclude by saying the parties who may be deprived of protected interests in connection with confirmation are entitled to notice, an opportunity to be heard, and an impartial adjudicator. These due process protections have not changed as a result of Evans. Evans thus does not create a due process violation. We ask the court to deny the constitutional challenge. Thank you very much. Thank you. All right. You have three minutes left. Please go ahead. Thank you. I want to start where the government leaves off in terms of safeguards. And Judge Ferris, you asked the question, isn't the answer here to make trustees salaried employees? Respectfully, Your Honor, I don't think that the court has to say anything like that. I think all the court has to do is deal with the challenge in front of it. And in no case has the Supreme Court said that where a quasi-judicial function exists, and that function is subject to a bias, that we will look to safeguards. Because if you look at Toomey, you look at Ward, you look at Connolly, in all of those cases, you had safeguards arguably present. In Ward, for example, the individual had a de novo appeal to a higher court. And the court said that's not what we do here. It doesn't matter whether we're talking about $5 or $20. Even $1 is too much when it comes to due process. Safeguards aren't an answer to the problem of whether a judge or a quasi-judicial actor may have an interest in a matter that they've been tasked with resolving. And then I... That's the key, resolving. Resolving. And I want to speak to two important points that I think have gotten lost here on that front. First, I think that the government downplays the fact that when a trustee renders a recommendation on plan confirmation, in Escarcega, the court says they have to say yes or they have to say no. So they do have to make a decision. And that decision does have legal consequences because, as Escarcega points out, if the trustee objects, then that requires the... It forces the debtor to meet strict repayment requirements and a three- to five-year plan. It also... If the trustee doesn't... That's also true of a creditor. That's true, Your Honor, but the creditor is not a public officer, whereas the trustee is a public official. And then on top of that, you have the fact that the trustee alone can, through their recommendation, satisfy the debtor's burden of demonstrating good faith. That's what the Third Circuit has said, I believe, in the Sykes case. And we know that that burden is important based on what this case... What the back has said in Warren. So I think that there's that element to it, and then there's also the enforcement element. Everything that comes before plan confirmation, all of the judgments, all of the decisions the trustee has to make, whether it's a debtor who's not making their payments on time, whether it's a debtor who's failed to produce their tax returns. In all of those instances, the trustee has to make a relatively final decision. Do I commence an enforcement proceeding? Do I ask for this case to be dismissed? But that's just another request, right? The court can either grant that or not grant it. That's true, Your Honor, but that's an enforcement function as opposed to a quasi-judicial function. But in the Marshall v. Jericho case, on which the government relies, the Supreme Court leaves this as an open question, what do process limits apply in the context of enforcement functions? And here, the government... I come back to my point about the built-in bias in all percentage fees. Let's suppose the plan's confirmed, and the trustee comes and says, plan payments are behind, dismiss the case. That's going to cut off fees. And I know that some trustees are faster to file those motions than others. That may be true, Your Honor, but I think that there's a difference between that situation and saying you don't get any fees unless a plan is confirmed. That's giving the trustee an interest in the very matter that they are recommending to the judge. And the last point I do want to make on this... I'm sorry, Your Honor. Yeah. That objection may come or not come a month after plan confirmation on a five-year plan, right? So tell me why it's different. Well, the reason, Your Honor, it's different is because, in the end, the trustee is not being asked. It's not a situation where it's an all-or-nothing proposition. If a trustee is being paid... But let's compare the all or the nothing. I mean, the all may be three months to get the confirmation or not. Right. Or the all may be 57 months of payments, right? That's Judge Ferris' question. Why don't we have the same bias pre- and post-confirmation? Well, the difference is an all-or-nothing proposition. To give you a simple example, I think what's missing here, perhaps, and I think we try to express this in our case, is that what's lost in the government's account is a consideration of costs, right? Every case, you incur certain costs to administer the case, and then you get certain revenues from the debtor in terms of the payments that you're extracting. Now, if the trustee, and this is generally the way it's supposed to work, if the trustee aligns the amounts to the costs, it generally balances out across the arc of the plan. But if you have a situation where it's an all-or-nothing situation, so for plan confirmation purposes, it's been six months, $1,200 of costs have been incurred. If the plan is not confirmed, the trustee is out $1,200. That's a different situation than saying the trustee all along collects around $1,200, it offsets the cost whether the plan is confirmed or not. We're past your time, and I want to make one more question.  And that is, isn't being out $1,200 just being the fee stays 10% longer during the year before the U.S. trustee cuts it down? Well, Your Honor. At least for this trustee. Well, the hypothetical we use in our case is we say, for example, imagine that you have a brand-new trustee. Okay, well, I'm not that imaginative. Let's stick with most trustees. Sure, but I think the reason why that hypothetical is important is the trustee has to get revenue from somewhere. And if you have a brand-new trustee for whom he has no plan-confirmed cases, so he's not drawing any revenue, and all of his revenue depends on plan confirmation, then if he, in 100 cases, he is objectively obligated, he feels, to object to plan confirmation, the cases should be dismissed, he gets nothing. That's an anti-enforcement incentive, and that's what I think sets apart this circumstance. I think the panel correctly recognizes this is unusual in that it's the person, the decider, so to speak. I understand you may take issue with that. It's the decider who's objecting. But I would argue we want the deciders to come forward and to challenge potential biases that are being foisted on them, the same way we want judges to self-recuse. But the key point here is that, in the end, we don't want to place an anti-enforcement incentive on trustees in this context. And that's something that no case, as far as I'm aware, defends. Okay. Thank you very much. Thank you, Your Honor. I appreciate your patience. Interesting case. The matter is under submission. Thank you. All rise. Court is in recess.
judges: Lafferty, Faris, and Spraker